992 F.2d 1219
 24 Envtl. L. Rep. 20,175
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
CITIZENS INTERESTED IN BULL RUN, INC.; Frank Gearhart;
Kathy Williams; Ralph Frohwerk Plaintiffs-Appellants
v.
William K. REILLY, Administrator of the United States
Environmental Protection Agency; United States
Environmental Protection Agency; United
States of America Defendants-Appellees.
 No. 91-36119.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 4, 1993.*
Decided April 29, 1993.
 
 Before TANG, POOLE and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Citizens Interested in Bull Run, Inc. and some of its individual members (collectively, CIIBRI) brought this action against the Environmental Protection Agency (EPA) to compel the EPA to promulgate regulations under section 518(e) of the Clean Water Act (CWA),[1] 33 U.S.C. § 1377, specifying how Indian tribes should be treated as states for purposes of administering the CWA on Indian reservations. The district court dismissed the suit for lack of Article III standing, and CIIBRI appeals.
 
 I.
 
 3
 CIIBRI's amended complaint asserted that its members used waters downstream from Indian reservations "recognized by the federal government as satisfying the jurisdictional prerequisites for assumption of regulatory and enforcement powers" under the CWA or "would likely qualify for assumption of regulatory jurisdiction," including the Flathead, Warm Springs, Umatilla, Yakima, and Colville Indian Reservations. Further, it alleged that the EPA was not enforcing the CWA on one or more Indian reservations to the maximum extent possible (without specifying which reservation), and that the promulgation of regulations under § 518(e) would "allow" enactment of stricter CWA standards and more attentive enforcement. The plaintiffs also alleged "procedural injuries" under the CWA citizen suit provision and the Administrative Procedure Act (APA) to their interests in the enforcement of the CWA to the fullest extent and to individual Indian members' interests in Native American tribal sovereignty.
 
 II.
 
 4
 This court reviews de novo a dismissal for lack of standing. Conti v. City of Fremont, 919 F.2d 1385, 1387 (9th Cir.1990). In order to assert standing under Article III, a plaintiff must have suffered a "distinct and palpable" injury, Whitmore v. Arkansas, 495 U.S. 149, 155 (1990), must demonstrate a " 'fairly traceable' causal connection between the claimed injury and the challenged conduct," Duke Power Co. v. Carolina Environmental Study Group, Inc., 438 U.S. 59, 72 (1978), and must show a " 'substantial likelihood' that the relief requested will redress the injury claimed." Id. at 75 n. 20. These Article III standing requirements are applied to citizen suits under the CWA. Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n, 453 U.S. 1, 16 (1981).
 
 
 5
 CIIBRI has not established that there is a "substantial likelihood that the relief requested will redress the injury claimed." Duke Power Co., 438 U.S. at 75 n. 20. CIIBRI alleges only that the regulations regarding how to treat Indian tribes as states would "allow" specified tribes to enforce more strictly the CWA. Although CIIBRI alleged that a number of Indian tribes have been "recognized by the federal government as satisfying the jurisdictional prerequisites for assumption of regulatory and enforcement powers" under the CWA or "would likely qualify for assumption of regulatory jurisdiction," CIIBRI does not allege that any of these tribes would in fact regulate water quality more strictly than does the EPA. The regulations under § 518(e) would not require tribes to exceed federal standards under the CWA.
 
 
 6
 A plaintiff does not have standing if the remedy for the alleged injury depends on the actions of a third party not before the court. In Fernandez v. Brock, 840 F.2d 622, 624 (9th Cir.1988), four migrant farmworkers sought to compel the Secretary of the Treasury to promulgate regulations under ERISA that would govern pension plans for seasonal workers. This court held that the farmworkers did not have standing because they could not demonstrate that their employer would continue to offer a pension plan for its workers if required to cover seasonal workers, and could not demonstrate that the regulations would cover them if promulgated. Id. at 627. See also, Lujan v. Defenders of Wildlife, 112 S.Ct. 2130, 2140-42 (1992) (plaintiffs could not demonstrate redressability where the relief sought was within the control of agencies not parties to the case); Allen v. Wright, 468 U.S. 737, 757-59 (1984) (parents of black children did not have standing to challenge tax-exempt status awarded to racially discriminatory schools, because it was speculative that losing the tax-exempt status would lead the schools to change discriminatory policies); Simon v. Eastern Kentucky Welfare Rights Organization, 426 U.S. 26, 43 (1976) (indigent plaintiffs did not have standing to challenge the government's grant of tax exemptions to hospitals not required to provide greater services to indigents; plaintiffs could not demonstrate that the hospitals would not elect to forgo favorable tax treatment to avoid treating indigents).
 
 
 7
 As in the cases cited above, the promulgation of § 518(e) regulations "would not ensure that the third parties involved--[Indian tribes]--would modify [water quality standards]." Fernandez, 840 F.2d at 627.
 
 
 8
 CIIBRI attempts to avoid the Article III standing requirements by alleging that it has "procedural standing" under the CWA citizen suit provision and the APA, due to its interest in the EPA following its alleged nondiscretionary duty to issue the regulations. However, the Supreme Court has held that a plaintiff asserting standing from a "procedural injury" must still demonstrate Article III standing. See Defenders of Wildlife, 112 S.Ct. at 2146 (a plaintiff "claiming only harm to his and every citizen's interest in proper application of the Constitution and laws ... does not state an Article III case or controversy."); Middlesex County Sewage Auth., 453 U.S. at 16 (Article III standing requirements applied to CWA citizen suits). See also Fernandez, 840 F.2d at 630 ("a plaintiff who merely claims that a defendant violated a statutory duty does not necessarily satisfy the requirement of injury in fact in article III."); Bennally v. Hodel, 940 F.2d 1194, 1198 (9th Cir.1990) (plaintiffs challenging governmental action under the APA still must meet the Article III standing requirements of injury in fact which is redressable by the court). In fact, this court has specifically held that under the citizen suit provision of the CWA, plaintiffs must demonstrate that the relief requested is redressable. See Gonzales v. Gorsuch, 688 F.2d 1263, 1268-69 (9th Cir.1982).
 
 
 9
 Finally, CIIBRI claims that its individual Native American members have a procedural interest in tribal sovereignty: section 518(e) requires the EPA to promulgate regulations which will determine which governmental entity will regulate water quality on Indian reservations. However, no tribes are parties to this action, and any procedural rights in protecting tribal sovereignty would not extend to individual tribal member plaintiffs. See Bennally, 940 F.2d at 1199 (Navajo-Hopi Settlement Act did not create procedural rights in individual Navajos to challenge relocation).
 
 
 10
 AFFIRMED.
 
 
 
 *
 The panel unanimously agrees that this case is appropriate for submission without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Section 518(e) states, in relevant part:
 The Administrator is authorized to treat an Indian tribe as a State for purposes of Subchapter II of this chapter and sections 1254, 1256, 1313, 1315, 1318, 1319, 1324, 1329, 1341, 1342, and 1344 of [the CWA] to the degree necessary to carry out the objectives of this section, but only if--
 (1) the Indian tribe has a governing body carrying out substantial governmental duties and power;
 (2) the functions to be exercised by the Indian tribe pertain to the management and protection of water resources which are ... within the borders of an Indian reservation; and
 (3) the Indian tribe is reasonably expected to be capable, in the administrator's judgment, of carrying out the functions to be exercised in a manner consistent with the terms and purposes of this chapter and of all applicable regulations.
 .... Not later than 18 months after February 4, 1987, the Administrator shall, in consultation with Indian tribes, promulgate final regulations which specify how Indian tribes shall be treated as States for purposes of this chapter.